Metcalf? Good morning. May it please the court. My name is Hannah Rogers Metcalf and I have distinct privilege to be here today before this court representing the appellant Jacqueline Hurst. I know the court is very familiar with the facts of this case, although I am aware that the record is somewhat confusing. I will limit my remarks with regard to the facts unless the court has specific questions so as not to waste any of the court's time with regard to the facts. As the court knows, this is a racial discrimination case involving the enforcement of employee disciplinary measures under Title VII. And in this case, the appellant, Ms. Hurst, provided the district court both direct and indirect evidence of this discrimination. I will save the issues with regard to the direct evidence until later on in my argument unless the court would like for me to address that initially. And we'll go ahead and begin with the discussion of the indirect evidence and the district court's conclusions with regard to that evidence in its opinion below. As this court knows, in order for a plaintiff to establish a prima facie case of discrimination under the indirect method of proof, they must use the McDonnell-Douglas framework. And as the Fourth Circuit has said definitively in Cook v. CSX, there are three requirements to establish a prima facie case. First, the plaintiff must be a member of a protected class. I don't think that's an issue here. Ms. Hurst is a member of a protected class. Second, there must be prohibited conduct in which Hurst engaged which was comparable in outside of the protected class. In this case, Hurst was arrested and the District of Columbia statute provided that individuals who worked as correction officers with youth who had been arrested were subject to disciplinary actions. She wasn't just arrested, right? I thought she was found guilty. She was ultimately. Well, there is a question about that with regard in the record, but under the Maryland statute, the ultimate disposition was probation before judgment. Then as a condition precedent, she had to either have pled guilty, been found guilty, or nullicontent, right? That's correct, Your Honor. So there really isn't much of a question. There's not a question with regard to the law. Hurst in her affidavit, I believe, stated that she did not plead guilty. Do you understand that? That doesn't really make any difference. You're correct, Your Honor. That is correct. But yes, she was found guilty or was placed on probation before judgment by the Maryland court, but that is a distinction without a difference. The statute says that these employees are subject to suitability determinations and potentially termination if they are arrested. That's the first test. Once they're arrested, DYRS and DC Human Resources receives notice of the offense. That's what triggers the criminal background, the suitability determination. That's what triggers the . . . I thought the district court, in this case perhaps I'm mistaken, but I thought it all boiled down to the district court determining that your case in chief did not establish reliable comparators for your client. Is that accurate? I think that's right, Your Honor. I think the district court boiled the case down to a comparator evidence case and concluded . . . Is that error by the district? Yes, Your Honor. Yes. Which? Boiling it down to that prong or its conclusions with respect to the comparatives? Both, Your Honor. At the initial stage, boiling it down to such an intense scrutiny of the comparator evidence at the prima facie stage is error. Cook's decision states only that she must show comparable seriousness of misconduct and that she received . . . You argued this line in your brief? I don't know that I argued it as well as I should have, Your Honor, but I believe that the argument in the brief is that the district court erred with regard to the comparators. That was what I understood your argument to be, that the selection of the comparators, the persons selected were not, in fact, true comparators. The argument in the brief is that the judge ruled that she failed to establish a prima facie case with regard to her comparators. Right, because at the second stage, because you have to show that similarly situated people were treated differently. That's right. We did make that argument, Your Honor, that the comparators . . . we argued that her comparators were valid, that they were similarly situated, and they were treated differently, and that the district court erred in finding that they weren't similarly situated. I can address that for the court. She presented not one, but a number of comparators. About the comparators, she did not present this T.J. person right in her opposition to this T.J., and it looks to me like the whole T.J. thing is kind of waived. Yes, Your Honor. I can address that. The court is correct. In her underlying counsel's brief to the court in response to summary judgment, there is — it's very difficult to discern initially because there's all these different numbers, but it looks as if the brief does not mention T.J. However, her amended complaint specifically references this comparator who was — who was on the step document. I don't know if she did do any, though, at summary judgment. Well, Your Honor, she mentions this comparator in her complaint, and then the district actually provided the evidence to the court with regard to T.J. Catherine Oler's affidavit, she's the management liaison. She discusses T.J. and provides extensive documentation. Was there argument in the district court, or . . . I'm trying to figure out how this particular comparator came to the attention of the district court in a way that would require the district court to rule on it. Our contention is that it came to the attention of the district court in the District of Columbia's own submission. The District of Columbia . . . How does that help you out if you didn't argue for it? The fact that it wasn't raised in the brief doesn't mean that it wasn't in the record before the district court. This is a very fact-intensive case. You can't expect the district court judge, can you, to sort of go through and try to, on his own, figure out whether there are sort of disputes of fact or . . . I mean, it's a summary judgment motion. Don't you have to point the judge to your evidence? I think, yes, it would be helpful had the brief pointed to that specific comparator. But in this case, we have an entire record that is filled with not just T.J., but a number of comparators. Forget T.J. All right. Look at the others. Okay. I still think T.J. is before the court because the district provided that evidence in response to the complaint, but there are other comparators that the court could have looked at. The issue is that the district court got down in the weeds. As Judge Davis said in the concurrence in the Merritt case that I know Judge Duncan was involved with, you don't want to lose the forest for the trees. All of these comparators are similarly situated. They all work at the same facility. They all have the same job. They report to the same cohort of supervisors, and they all were arrested. They all were evaluated using the same statute. But they weren't all found guilty. That's right, Your Honor. That is correct. And why is that similarly situated, that there was no disposition of guilt? They weren't all found guilty, Your Honor, but several were. Of felonies? Is there anyone where we know from the record that someone was convicted of a felony other than your client? No, Your Honor. I could not find in the record a comparator that was found guilty of a felony. But the Cook case, in the Supreme Court's decision in Santa Fe, and then all of its progeny say that isn't relevant to the determination at the prima facie stage. What's not relevant? Whether there was a comparable disposition? The comparable seriousness is whether or not they violated the rule, the statute here. So it's not, you don't get into the level of the offense, felony, how old it was, all that. There's a case out there that says the level of the offense is not something that can distinguish comparators. The Fourth Circuit's decision in Cook v. CSX, the employees in that case violated the rule, Rule 500, in different manners and in different ways and with differing levels of severity. Did they violate a statute with different levels of culpability? I mean, that's really the problem that you have here. Well, they, the company had a disciplinary policy in place that said if you violate this rule you can be terminated. Here, the District of Columbia has a policy that says if you have a- The answer is no? Well, I think what you're asking is about a different layer. The policy says if you're arrested, then you are subject to suitability determination. And in that regard, all the comparators violated the same policy. But in making the suitability determination, is there anything that says a decision maker cannot consider the level of the offense and whether or not the person was convicted of a felony? I mean, I just don't understand how you could infer racial discrimination from the fact that someone who is convicted of a felony is fired and someone who is either not convicted or commits a less serious crime is not fired. That seems like a very substantial, let's see, I'm quoting from Cook, the case we're all talking about, you have to have engaged in similar conduct without differentiating circumstances that would distinguish them. Whether you were convicted of a felony or not seems like it might be a differentiating circumstance, no? It is different, but it goes to the next level, the next step in McDonnell-Douglas to the pretext of termination. It doesn't go to the initial argument with Cook of did you violate the policy and was your violation of comparable seriousness? Here all of these comparators were arrested. Some were convicted and for some pretty serious offenses, assaulting a police officer. And so getting down into the specifics of how they were, the reasons for the suitability termination and the outcome would go to her pretext argument and wouldn't. Is the bottom line of the argument you're making now that it is error as a matter of law in these types of cases for the decision maker to distinguish between felonies and misdemeanors? At the second level of McDonnell-Douglas because you're apparently conceding that it's appropriate at the . . . Pretext, at the next level, third level. I'm always addressing the different levels because the district court didn't go that far. He said . . . Yeah, but you haven't got the pretext when they're making the suitability determination and I'm trying to fathom a rationale here as a matter of law because if the facts are here, as I understand our questions to have elicited, that your client was guilty of a felony and nobody else was, I'm trying to determine whether you're arguing that it is error for the suitability determination to be made on that basis by distinguishing between felonies and misdemeanors. I don't think it's error for the district to conduct a suitability determination and determine that someone is not suitable because they have committed a felony. I'm not saying that. I'm just saying that their offenses at the prima facie stage are of comparable seriousness and you don't get into the specifics at the prima facie stage. The burden at the prima facie stage is not onerous for a plaintiff. They all violated the statute. They all were then subject to the suitability determination. She was the only one who was terminated. I'm not sure if I've answered your Honor's question, but the argument is because the district court didn't . . . You would concede that the people who were found not guilty or had the charges dismissed would not be comparatories? I wouldn't concede that, Your Honor, based on the plain language of the statute that the district was applying here. Because the statute says you're subject to a suitability determination if you are arrested. I just don't understand why that statute matters at all. What we're trying to figure out is whether different decisions are explicable by different circumstances or whether, because they are not, we can infer racial discrimination. Then if we can infer it, then we get to the whole pretext thing. I don't understand why what statute you're operating under even addresses that. The point is there's a bunch of people who have done things wrong. They were treated differently. You have to figure out whether there are differentiating circumstances that seem on their face to explain that. I don't understand whether the fact that they all were subject to this review under the same statute . . . Can you explain to me? I must be missing something. I can try. Apparently, I'm not doing a very good job explaining myself. I think part of the problem is it seems as though all the statute does, at least as I understand it, is trigger a suitability determination. That's all it does. So it's the suitability determination that is operative for our purposes. The statute is irrelevant, except it triggers the suitability action, but that's all it  That's right. Then it's up to the district to determine whether or not that person . . . No, it's actually up to the employer. It triggers the suitability determination, as I read it, by the employer. That's right. Under the statute, even if you weren't convicted, you could have been terminated for the actions. I guess, putting aside those people, if you look at the comparators who were convicted, they also weren't terminated. I looked at . . . I went through the list pretty . . . The ones . . . There were some . . . There are comparators from 2005, and there was a judicial determination of guilt, but it was 2005. One of the factors was the lapse of time between the discovery of the action and the discovery of the disciplinary function and the fact that the person had been continued to function effectively. I'm just not seeing a particular . . . On this list, what's your best suitable . . . Yeah. Who's your best comparator? Who's your best . . . Yeah. Comparator DC, who was convicted of retail theft. That's the one I just talked about. Yes, Your Honor. That's right. 2005. He was convicted in 2005, but the determination, the background check, did not reveal that conviction until . . . He was disciplined in 2010. That's right. One of the reasons given was the lapse of time between . . . There was an explanation given for that. Right. He had effectively been rehabilitated. He'd been working there for five years. He'd never had a problem, so why would . . . That seems different. That's right. He was convicted in 2005. By the time it was discovered, it had been five years. The determination with regard to him is right around the same time as Hearst. And the reason given is different. And the reason given is different. And Hearst's argument would be that that was pretext. That goes to pretext. Well, we haven't gotten there yet. That's right. Because we're at the prima facie stage. That's right. And so our argument is that for the Court to consider, I know my time is out, but for why . . . He skipped on to the pretext stage. And at the prima facie stage, he has established comparators of people that are outside of her class that were treated differently. Steve? Uh-uh. Thank you very much. Ms. Wilson? I'm here. Ms. Wilson, and I should have asked Ms. Metcalf this, and I will when she comes back up. Do we have a hostile environment claim in front of us? No, Your Honor, you don't. It wasn't raised in the complaint. There wasn't an EEOC claim. It wasn't. There wasn't an EEOC charge. Yes. So, no. I think that's undisputed at this point. Well, in her brief, she said she never waived it, the right to assert it. And I wasn't quite clear what that meant, but I'll ask. Thank you. But it was not . . . You're saying it was not a cause of action in the complaint? It wasn't listed as a cause of action in the complaint. The facts in the complaint don't state a hostile environment claim. And there was no EEO claim raising that issue. Did she raise it in some motion or something? I'm just trying to figure out where this came from. In her opposition to the district's summary judgment motion, she referenced . . . There's a vague reference to it. But even that is ambiguous. The court should affirm the district court's grant of summary judgment to the district here because the plaintiff failed to identify evidence from which a jury could infer discrimination here. The similar situated standard requires enough similar circumstances to allow a meaningful comparison between the comparators. And that doesn't exist here. Of the eight comparators that Ms. Hurst focuses on in her complaint, five of them were not even addressed by DCHR. So there was not only a different decision maker, but an entire different agency. So those are out for that reason. Of the three that were addressed by DCHR, as the court's questioning has highlighted, there are significant differences. TG, which wasn't raised below or identified to the district court as relevant evidence. There was no finding of guilt there. That was put on the set docket. And there was a different decision maker. And there was 10 months difference in the decision. DC, as the court's questioning highlighted, that was misdemeanor retail theft. And it was not discovered for five or six years so that there was, as the decision maker recognized, significant time for rehabilitation there. And then the other person, PR, there was not even any indication of any finding of guilt or any conviction there. So we would submit that Ms. Hurst has simply failed to identify any comparator here to establish her prima facie claim. And that the district court properly granted summary judgment for that reason. Yes, just quickly, the district court relied very heavily on the fact that there were different decision makers. You don't need us to adopt a rule, sort of a bright line rule, that if it's a different decision maker, it can't be comparable. No, no. But just when you look at it, it's one of many factors. Yes, we don't need that bright line rule here. I would say that just as part of the totality of the circumstances here, there's insufficient evidence to state a prima facie claim. Right. Thank you. So if there are no further questions, we urge the court to affirm. Ms. Metcalf, are you arguing hostile environment? She did not raise it in her complaint, Your Honor. I just wanted to make sure. Thank you. Sorry, I thought there was another question. I wanted to go back to T.G., if I may. The Fourth Circuit's decision in Christian says that the district court should look at the record as a whole. And in this case, the record as a whole with regard to the comparators on her indirect evidence case, as well as the direct evidence, is sufficient to show an inference of discrimination at the prima facie stage. I just, I mean, just, I think it's a different decision maker, which may not, it's not dispositive, but so a different person 10 months later doesn't fire someone who wasn't convicted of a felony, and that's supposed to give rise to an inference that what's really going on here is race discrimination? I think you have to look at the record as a whole. I am. That's what I tried to put in all the facts. Both women had the suitability determination triggered by their arrest. The decision maker, I don't think the Court needs to adopt a bright line rule. I don't think this is the right, because the complicated record here, but the decision maker here doesn't operate in a vacuum. All of these supervisors weigh in on behalf of T.G. These are the same supervisors that Hearst deals with. These are the same supervisors that Hearst has gone to previously and complained about the racial discrimination and this direct evidence of derogatory comments that are made to her. They weigh in on behalf of T.G. Ultimately, T.G.'s case is placed on the step docket, but they both are involved in pretty serious offenses. T.G. doesn't deny the accusations. And the suitability determination is with regard to any derogatory information found out about that person that would impact their ability to work with youth, and T.G.'s acts are pretty serious. The same thing with the comparator who engaged in retail theft. It's a misdemeanor, but it is a crime relating to dishonesty, and it's equally as serious, and the agency discovers it around the same time as they deal with Hearst, but he's not terminated. And so the record as a whole, combining the direct evidence, which the district court never considered in its opinion, and we would contend that is error as well, the direct evidence combined with the indirect evidence is enough to raise an inference at the prima facie stage, and that's where the court concluded its analysis. No further questions? Thank you very much, Ms. Metcalf, and we note that you are court appointed, and we would like to thank you very much for your very able service to this court. Thank you, Your Honor. We will come down Greek Council and take a brief recess.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris